IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM T. SMITH, III,           :
                                           :
           Plaintiff,            :          CIVIL NO. 4:05-CV-1747
                                           :
           v.                    :          (Judge Jones)
                                           :
CO ROGER LUCAS, et al.,          :
                                           :
           Defendants.          :

**MEMORANDUM AND ORDER**

**May 31, 2007**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Plaintiff William T. Smith ("Plaintiff" or "Smith") initiated this civil rights action pursuant to 42 U.S.C. § 1983 following events that purportedly transpired during his confinement in the Dauphin County Prison ("DCP"), Harrisburg, Pennsylvania. Plaintiff is represented by counsel, and he filed an Amended Complaint (doc. 20) on July 13, 2006.  Named as Defendants therein are four (4) DCP employees: Warden Dominick DeRose, and Correctional Officers Roger Lucas, Tim Manwiller, and Chad Stake.  Plaintiff is also proceeding against two (2) John Doe and one (1) Jane Doe Defendants.

Smith describes himself as being a member of the Islamic faith who was transferred to DCP from the Smithfield State Correctional Institution, Huntingdon,

Pennsylvania ("SCI-Smithfield"), on May 20, 2005.  His Amended Complaint initially

seeks relief based upon the conditions of his confinement.  Smith describes DCP as

being "extremely overcrowded," "filthy dirty," and "infested with insects and mice."

(Rec. Doc. 20, ¶ 7).  He adds that due to the overcrowding "inmates are required to

sleep on the floor and in crowded day rooms."  Id.

   The second portion of Plaintiff's action regards purported misconduct that

transpired on the day of his arrival at DCP.  Specifically, Plaintiff states that he was

assigned to a day room due to overcrowding.  After a correctional officer smelled

smoke in that area,[1] the personal areas and belongings of Plaintiff and other prisoners

were subjected to a series of searches.  Smith was also purportedly forced to undergo

strip searches for no apparent reason.

   During a third search of Plaintiff's personal property, Defendant Lucas allegedly

picked up Plaintiff's copy of the Koran, and proceeded to crumple up pages "in an

obviously intentional effort to display contempt and disrespect for the Islamic faith."

(Id. at ¶ 12).  Lucas then threw the Koran over his shoulder.  Meanwhile, when Smith

protested,  Defendant Manwiller purportedly stroked Plaintiff's chin and sarcastically

asked,"where's your Muslim beard?"

   Approximately fifteen (15) minutes later, Smith was ordered into a hallway by

---

[1]  Tobacco smoking has been banned at DCP.

Defendant Correctional Officers who purportedly "began screaming and spitting in his face."  (Id. at ¶ 16).  Correctional Officer Lucas then handcuffed Plaintiff's hands behind his back and forcibly threw him to the floor face down.  It is next alleged that Smith was then beaten and kicked  by Defendants, causing injury to his ribs, face, eye, and shoulder.  According to the Amended Complaint, Plaintiff was also forced into a wall and beaten while being escorted to DCP's segregated housing unit.  Upon placement in segregation, Plaintiff was required to remove his clothes for the sole purpose of subjecting him to humiliation and embarrassment.  A female nurse, Jane Doe, was then summoned to Smith's cell as he was standing naked against a wall.  The nurse was ordered by two John Doe officials wearing white shirts (presumably lieutenants) to clean blood off of Plaintiff's shoulder.  The Amended Complaint maintains that Defendants conspired to subject him to mistreatment in retaliation for Smith's religious beliefs.

Plaintiff also alleges that although he was sentenced in the Dauphin County Court of Common Pleas to a term of work release and probation, Warden DeRose defied the imposed sentence by conspiring with other local and state officials to have Plaintiff improperly placed in a state prison and later in DCP for a period of 75 days. Plaintiff alleges that Warden DeRose did so to retaliate for Plaintiff's filing of the original Complaint in this matter.  Warden DeRose also purportedly tried to collect

3

money from Smith for room and board, and caused Plaintiff to suffer income losses.

In conclusion, the Amended Complaint alleges that Plaintiff was subjected to unconstitutional conditions of confinement. He was also purportedly singled out for mistreatment because of his Islamic religious beliefs. Furthermore, when he objected to the desecration of his Koran, Defendants conspired to retaliate against him by subjecting him to unwarranted and excessive physical abuse and humiliation. Finally, after the filing of his original Complaint and being sentenced to a term of work release, Smith claims that Warden DeRose defied the state court sentence by having him transferred to a state prison and later DCP and also caused him to suffer income losses through an improper attempt to collect money for room and board.

Presently pending is Defendants' Motion for Partial Summary Judgment ("the Motion"). (Rec. Doc. 36). The Motion has been briefed and is ripe for consideration.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of
> an element essential to that party's case, and on which that party will bear

the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party."  Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  Id.  In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

5

**DISCUSSION:**

Defendants claim entitlement to partial summary judgment on the grounds that: (1) Defendant Warden DeRose did not retaliate against Plaintiff by causing him to be unlawfully incarcerated; (2) Defendants Manwiller, Lucas and Stake had a legitimate purpose when searching Plaintiff and, thus, did not act in retaliation; (3) Smith was not denied needed medical care; (4) the John/Jane Doe Defendants should be dismissed because they have not been identified; (5) the Amended Complaint fails to assert personal involvement by Defendants with respect to the allegations that Plaintiff was subjected to unconstitutional conditions of confinement; and (6) Warden DeRose is entitled to qualified immunity.

We will address each of these arguments in turn.

**I.     Improper Confinement**

Plaintiff appears to claim two instances of at least attempted improper incarceration.  First, Plaintiff alleges that during 2005 Warden DeRose conspired with others to subject Smith to a retaliatory seventy-five (75) day placement in SCI-Smithfield and DCP.  Second, Plaintiff asserts that during the summer of 2006, Warden DeRose again attempted to have him transferred to the state correctional system.

Defendants argue that both claims are constitutionally insufficient because Smith

6

"cannot establish that Warden DeRose caused him to be unlawfully incarcerated or that the Plaintiff's constitutionally protected activities were in any way related to his incarceration." (Rec. Doc. 37 at 5). Plaintiff counters that genuine issues of material fact are in dispute regarding whether his initiation of this lawsuit was a substantial factor in the alleged subsequent retaliatory illegal holding of Plaintiff in DCP.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of law, and (2) said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied, only that the challenged actions were motivated in substantial part by a desire to punish him for the exercise of a constitutional right).

In Rauser v. Horn, 241 F.3d 330, 333 (2001), the Court of Appeals for the Third Circuit held that a prisoner must prove that the conduct that led to the alleged

retaliation was constitutionally protected.  If the prisoner satisfies that requirement, he

must then show he suffered some "adverse action" at the hands of prison officials.  Id.

Allah defined adverse action as being "sufficient to deter a person of ordinary firmness

from exercising his [constitutional] rights."  229 F.3d at 225.

Next, the prisoner must prove a causal link between the exercise of the constitutional

right and the adverse action against him.  However, under Rauser, once a prisoner

demonstrates that his exercise of a constitutional right was a substantial or motivating

factor in the challenged decision, prison officials may still prevail by proving that they

would have made the same decision absent the protected conduct for reasons

reasonably related to a legitimate penological interest.  241 F.3d at 334.

A claim of retaliation by government officials against an inmate for exercising his

First Amendment right to register a complaint regarding prison policies is sufficient to

set forth a § 1983 claim.  Newsom v. Norris, 888 F.2d 371, 376-77 (6th Cir. 1989).

Further, retaliation taken against an inmate for filing lawsuits against prison officials

violates an inmate's right of access to the courts.  Abdul-Akbar v. Department of

Corrections,  910 F. Supp. 986 (D.Del. 1996).  Even if the retaliation would otherwise

be permissible, retaliatory acts against prisoners for exercising constitutionally

protected rights is prohibited.  See Brooks-Bey v. Kross, No. 94-7650, slip op. at 7

(3d Cir. July 24, 1995).

### A.    Transfer in August 2005

Plaintiff asserts that the original Complaint in this matter was filed on August 25, 2005, Judge Kleinfelter ordered Smith's direct placement in work release on August 29, 2005, and the next day Plaintiff was transferred into state custody.  Plaintiff also asserts that because his 2005 transfer to state custody "followed so closely on the heels" of the initiation of this action, there are genuine issues of material fact which preclude entry of summary judgment.  (Rec. Doc. 43 at 11).

Warden DeRose concedes that Plaintiff's initiation of a lawsuit against DCP officials constitutes engagement in a constitutionally protected activity.  (See Rec. Doc. 37 at 9).  Moreover, it is undisputed that during August 2005, Smith was sentenced to a term of work release by Judge Kleinfelter of the Dauphin County Court of Common Pleas.  However, on August 31, 2005, Smith was taken into custody by a Pennsylvania state parole officer and returned to a state prison, SCI-Smithfield, and on November 4, 2005, Smith was transferred back to DCP from SCI-Smithfield.

During his deposition, Warden DeRose testified that he did not attend Plaintiff's August 2005 sentencing and had no knowledge of it until November 9, 2005.  (See Rec. Doc. 44, Exh. 3, at 23).  The Warden also noted that he had no involvement in direct commitments to the Dauphin County Work Release Center.  (See id. at 29).  As a result, he was not aware that Plaintiff was directly committed to the Work Release

Center during August 2005.  Warden DeRose's also testified that he did not know that Pennsylvania state parole officials had taken custody of Plaintiff and transferred him to a state correctional facility in late August 2005.  However, Warden DeRose admitted that on November 9, 2005, he became aware that Plaintiff had returned, that Plaintiff had been at SCI-Smithfield from August 30, 2005 to November 4, 2005, and that a decision by a subordinate denied Smith's request to be placed in work release due to the presence of a state parole detainer.

Further, Warden DeRose testified that he was unsure as to whether Plaintiff was eligible for work release because Judge Kleinfelter's Order authorizing work release for Smith conflicted with the pending Pennsylvania state parole detainer.  The Warden indicated that due to the pending detainer, it was his belief that the only person who could authorize Plaintiff's return to work release was the Secretary of the Department of Corrections.  Thus, the Warden brought the matter to the attention of the DCP Prison Board during its regularly scheduled November 9, 2005 meeting. The Prison Board, particularly President Judge Richard Lewis of the Dauphin County Court of Common Pleas, purportedly instructed DeRose not to release Smith to work release until he could research the matter.

While the Warden was awaiting a response from the Prison Board, more specifically President Judge Lewis, Judge Kleinfelter issued an Order on November 14,

2005 directing that Smith be immediately placed on work release, and Warden DeRose complied with said Order.  Defendants conclude that since any decisions made by Warden DeRose with respect to Plaintiff were not influenced by Plaintiff's initiation of a lawsuit against DCP officials, the Warden is entitled to entry of summary judgment.

Based upon this Court's review of the record, the following facts are undisputed.  On or about May 20, 2005, Plaintiff was transferred to DCP from SCI-Smithfield for the purpose of attending a hearing in the Dauphin County Court of Common Pleas.  On June 28, 2005, Smith completed service of a criminal sentence and was released from SCI-Smithfield.

In August 2005, Judge Kleinfelter imposed a criminal sentence of nine (9) to forty-eight (48) months on Plaintiff with the first nine (9) months to be served in work release.  This sentence resulted in an immediate and direct commitment of Smith to the Dauphin County Work Release Center, apparently on August 29, 2005.

The original Complaint in this matter was filed on August 26, 2005; it related to events which allegedly transpired in May 2005 at DCP and did not name Warden DeRose as a defendant.  However, at some point prior to November 9, 2005, DeRose obtained knowledge that Smith had initiated the present lawsuit.  DeRose was aware that Smith claimed that he was injured by correctional staff in the May 2005 incident.

On August 31, 2005, a state parole officer assumed custody of Plaintiff and had

him transferred to a state correctional facility.  On November 4, 2005, Plaintiff was

returned to DCP, and on November 9, 2005, Warden DeRose was notified that Smith

was at DCP.  The issue of whether Plaintiff should be held at DCP or in work release

was brought to the attention of the DCP Prison Board on November 9, 2005.

Subsequently, on November 14, 2005, Judge Kleinfelter ordered Plaintiff be

transferred from DCP to Work Release.  There was timely compliance with said

Order.

      Accordingly, we find that there have been no facts presented which could

establish that Warden DeRose had any personal involvement in the decisions whereby

Plaintiff was placed in the Dauphin County Work Release Center during late August

2005; transferred into state custody by a state parole official on August 31, 2005; and

transferred back to DCP on November 4, 2005.  Moreover, although the Warden did

have personal involvement in the decision which resulted in Smith remaining in DCP

from November 9, 2005 to November 14, 2005, the Warden's undisputed deposition

testimony that he  was directed by the Prison Board, including Dauphin County

President Judge Lewis, to take such action, precludes a finding that said action was the

result of any retaliatory motive.  Indeed, to the contrary, Defendant DeRose's

undisputed testimony that he was unsure as to whether Smith should be transferred to

work release due to the presence of a state parole detainer, and that he sought

guidance from the Prison Board as to how to proceed, sets forth a legitimate non-retaliatory motive for the subsequent five (5) day confinement of Smith at DCP.

Thus, Plaintiff has not alleged sufficient facts to establish a retaliatory motive by Warden DeRose. Rather, Smith's speculative, conclusory retaliation claim fails to satisfy the requirements of <u>Rauser</u> and warrants entry of summary judgment in favor of Warden DeRose.

### B.  Attempted Transfer in 2006

Plaintiff's Amended Complaint also vaguely contends that Warden DeRose attempted to use his authority "to have the plaintiff do more hard time now that he has finished work release and is due to go on probation." (Rec. Doc. 20, ¶ 44). Warden DeRose denies that he attempted to have Plaintiff returned to state prison during the summer of 2006.

As Plaintiff has not come forward with any facts supporting this claim and there is no indication that Smith was returned to state prison during the summer of 2006, this claim fails to satisfy the requirements of <u>Rauser</u>.[2]

### II.  Searches

---

[2] However, it is also alleged that DeRose engaged in retaliation when he "attempted to use his power as a warden to collect monies from the plaintiff for room and board for which the plaintiff believes he is not liable or responsible." (Rec. Doc. 20, ¶ 45). This assertion of retaliatory conduct is not addressed in the pending Motion and will proceed.

13

In his Amended Complaint, Plaintiff asserts that he was subjected to a series of searches for the alleged purpose of subjecting him to harassment "to ridicule and intimidate him as a Muslim a [sic] faith to which he had converted six or seven years ago." (Rec. Doc. 20, ¶ 14). Defendants concede that Smith's exercise of his religious beliefs satisfies the requirement that he was engaged in a constitutionally protected activity. However, they claim entitlement to entry of summary judgment with respect to the allegations that Smith's person and belongings were unlawfully searched in retaliation for his religious beliefs because Plaintiff "cannot establish causation." (Rec. Doc. 37 at 12).

Defendants admit that on May 20, 2005, correctional officials initiated strip searches of Plaintiff, and at least one other inmate who was also in the dayroom, after a guard smelled cigarette smoke in that area. All dayroom inmates, including Plaintiff, had their personal property searched. Smith objected to being strip searched, but had not previously disclosed his religious affiliation to correctional staff.

In Hudson v. Palmer, 468 U.S. 517 (1984), the United States Supreme Court established that inmates have no privacy rights in their cells, and, thus, that there is no constitutional prohibition against prison officials conducting unauthorized cell searches. Id. at 525-26; Rambert v. Durant, No. 95-5636, 1996 WL 253322, at *2 (E.D. Pa. May 10, 1996); Gilmore v. Jeffes, 675 F. Supp. 219, 221 (M.D. Pa. 1987).

14

Searches are an important part of prison security and, accordingly, prison officials are entitled to unfettered access without being subjected to claimed violations under the Fourth Amendment to the Constitution.  Hudson, 468 U.S. at 527.

However, it has also been held that although the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells, searches which constitute "calculated harassment unrelated to prison needs" are not necessarily permissible.  Hudson, 468 U.S. at 530; Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993); Proudfoot v. Williams, 803 F. Supp. 1048, 1051 (E.D. Pa. 1992) (stating that searches conducted for 'calculated harassment' may constitute an Eighth Amendment violation).  "Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity."  Hudson 468 U.S. at 530.

It is initially noted that this Court concurs that Smith's exercise of his religious beliefs is protected activity under the First Amendment.  The following facts are undisputed.  During May 2005, DCP was a non-smoking facility.  On May 20, 2005, Plaintiff returned to DCP and was placed in a dayroom.  On that same date, Correctional Officer Lucas smelled cigarette smoke in the dayroom where Plaintiff was being housed.  Defendants Lucas and Manwiller began strip searching Smith and at least one other inmate in the dayroom.  All prisoners in the dayroom had their personal property searched for contraband, i.e. cigarettes.  Plaintiff had not previously informed

15

prison officials of his religious affiliation.

Based upon an application of <u>Hudson's</u> standards to the undisputed facts of this case, Plaintiff has failed to sufficiently support a claim that he was subjected to a strip search and search of his personal property in retaliation for his religious beliefs. In light of Plaintiff's failure to produce affirmative competent evidence as required under <u>Anderson</u>, and the fact that the searches were motivated by a legitimate penological purpose (a search for contraband), and because Smith had no reasonable expectation of privacy, it is the conclusion of this Court that Plaintiff's Fourth Amendment rights were not implicated with respect to the conduct of the correctional officers prior to the finding of the Koran.[3]

## III.   Medical Treatment

Plaintiff claims that following the altercation with Correctional Officers Manwiller, Lucas, and Stake, he was denied "prompt and proper  medical care." (Rec. Doc. 20 at 2).  His Amended Complaint generally contends that "[k]nowing the plaintiff was injured, the defendants denied him medical treatment which he only received once he arrived back at SCI Smithfield."  (<u>Id</u>. at ¶ 38).   Plaintiff adds that although he was seen by a nurse, the correctional officers who were present

---

[3] Smith also contends that after he was found to have a copy of the Koran, the search became offensive.  Under the standards set forth above, the purported intentional damaging of Plaintiff's copy of Koran, and accompanying verbal and physical harassment, could conceivably rise to the level of a constitutional violation.  Consequently, those claims shall proceed.

intimidated him into denying that he had been injured.

Defendants contend that there is no evidence to establish that they failed to provide Smith with proper medical care.  To the contrary, they contend that in accordance with DCP policy, a nurse was summoned to examine and assess Plaintiff following the May 2005 altercation.  The nurse, Casey Groome, asked Smith if he was injured, and Smith indicated that he was alright.  Groome  treated an abrasion on Smith's right shoulder.  Days later, when Warden DeRose was notified that Plaintiff was complaining of rib pain, Plaintiff was further examined, including the taking of x-rays.  No injury was discovered.

Pursuant to the Supreme Court's decision in Estelle v. Gamble, 429 U.S. 97 (1976), an incarcerated plaintiff must demonstrate that prison officials have breached the standard of medical treatment to which he was entitled.  The government has an "obligation to provide medical care for those whom it is punishing by incarceration." Id. at 103.  However, a constitutional violation does not arise unless there is "deliberate indifference to serious medical needs of prisoners" that constitutes "unnecessary and wanton infliction of pain."  Id. at 104 (citation omitted).  A later decision by the Supreme Court established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 841 (1994).           Thus, a

17

complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. However, where a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Nevertheless, it is true that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id.

Deliberate indifference requires more than a medical error. Rather, it must be shown that a prison official failed to take appropriate action despite his or her knowledge that such conduct would create a substantial risk of serious harm. The Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.

It is undisputed that the Defendant Correctional Officers summoned medical

18

assistance for Plaintiff following the May 2005 altercation.  The only apparent claim

asserted is that said Defendants pressured Smith into denying that he had been injured

when he was questioned by the nurse who responded to the request for medical

assessment.

However, Plaintiff clearly concedes that Defendant Correctional Officers, all of

whom are non-medical personnel, provided Plaintiff with trained medical assistance

following the altercation.  The only injuries identified by Plaintiff are abrasions and a

separation in his left rib cage.  More importantly, Smith admits that his injuries were

clearly visible, thus, supporting a determination that any failure to fully assess

Plaintiff's injuries was not caused by the Correctional Officers' conduct, but rather

due to an insufficient examination by the nurse.  It is additionally noted that according

to Defendants, an x-ray taken of Plaintiff failed to reveal any rib injury.

Based upon an application of the standards announced in <u>Durmer</u> to the

undisputed facts, and because Defendant Correctional Officers timely arranged for

Plaintiff's visible injuries to be examined by a member of the prison's medical staff,

their alleged conduct, although not condoned, does not rise to the level of a

constitutional violation.

## IV.   John/Jane Does

Defendants next assert that the John and Jane Doe Defendants should be

dismissed because Plaintiff has failed to identify them.  (See Rec. Doc. 37 at 16).
Notably, Plaintiff's opposing brief does not address this issue.

John and Jane Doe defendants may only be allowed "to stand in for the alleged
real parties until discovery permits the intended defendants to be installed." Johnson
v. City of Erie, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted).  Absent
compelling reasons, a district court may dismiss such defendants if a plaintiff, after
being granted a reasonable period of discovery, fails to identify them.  Scheetz v.
Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must
eventually be dismissed, if discovery yields no identities.").

Based on this Court's review of the record, despite the filing of this action in
August 2005, Plaintiff has not yet provided this Court with the identities of those the
remaining John Doe defendants.  Further, Plaintiff's opposing brief does not address
Defendants' request for dismissal of the John and Jane Doe Defendants.  Thus, under
the standards announced in Sheetz, entry of dismissal in favor of John and Jane Doe
Defendants is appropriate.

## V.      Conditions of Confinement

Plaintiff's Amended Complaint generally contends that DCP was overcrowded,
unsanitary, infested with mice and insects, and filthy.  Defendants contend that they are
entitled to entry of summary judgment with respect to Smith's conditions of

confinement claims because the Amended Complaint fails to "allege any personal involvement of any of the defendants related to this claim."  (Rec. Doc. 37 at 16).  Significantly, Plaintiff's opposing brief does not address this issue.  Moreover, the factual history of the case, which is set forth in Smith's opposing brief, contains no mention of his allegations of unconstitutional conditions of confinement.  (See Rec. Doc. 43 at 1).

Civil rights claims cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

The Supreme Court, in Farmer v. Brennan, 511 U.S. 825 (1994), described the standard for determining deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth

21

> Amendment . . . unless the official knows of and disregards an
> excessive risk to inmate health or safety; the official must be aware
> of facts from which the inference could be drawn that a substantial
> risk of serious harm exists, and he must also draw the inference.

Id. at 837.  Thus, to succeed on such a claim, the prisoner must show: (1) that he was

incarcerated under conditions posing a substantial risk of serious harm; (2) that the

defendant was "aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists;" (3) that the defendant actually drew this

inference; and (4) that the defendant deliberately disregarded the apparent risk.  Id. at

837.

A review of the Amended Complaint reveals that Smith's assertions of

unconstitutional conditions of confinement are set forth in a conclusory fashion.  The

Amended Complaint does not provide any description as to the exact nature, location

or duration of  those alleged unconstitutional conditions, and there are no averments

directed towards any of the named Defendants which respect to the claims that DCP

was filthy, overcrowded, unsanitary, and infested with mice and insects.  (See Rec.

Doc. 20, ¶¶ 7-8).  In light of the above factors, this Court simply cannot conclude that

the Amended Complaint has set forth facts that would establish that any of the

Defendants knew or should have been aware of the existence of conditions which were

of a magnitude to pose a risk to the health or safety of the DCP inmate population.

Thus, under the standards developed in Farmer, a viable civil rights claim has not been

stated.

Moreover, based on Plaintiff's failure to even mention this claim in his opposing brief, it appears that he has abandoned the pursuit of said allegations.  Thus, Defendants' unopposed argument requesting entry of summary judgment with respect to Plaintiff's conditions of confinement claims will be granted.

## VI.    Qualified Immunity

Defendants also claim that Warden DeRose is entitled to qualified immunity. Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Id.; Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).  It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials."  People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438

23

U.S. 478, 504 (1978)).

The United States Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), established a two-part test for analyzing qualified immunity claims.  <u>See</u> <u>also</u> <u>Curley v. Klem</u>, 298 F.3d 271 (3d Cir. 2002); <u>Bennett v. Murphy</u>, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation."  <u>Bennett</u>, 274 F.3d at 136.

As previously outlined herein, this Court has concluded that with the exception of the claim that Warden DeRose retaliated against Plaintiff by subjecting him to an improper assessment of room and board and causing him to suffer income losses, Plaintiff's allegations against Warden DeRose do not set forth a viable civil rights claim.  However, as Defendants' arguments relating to the instant Motion do not address the aforementioned only remaining claim against Warden DeRose, Defendants have not asserted that he is entitled to qualified immunity related thereto.  Thus, the first prong of <u>Saucier</u> has not been satisfied with respect to the remainign claim and further discussion of Defendants' qualified immunity argument is not required.

## <u>CONCLUSION</u>:

This Court's analysis of the merits of Plaintiff's numerous claims establishes that he has failed to establish a claim of constitutional misconduct sufficient to survive

Defendants' summary judgment arguments.  Pursuant to the above discussion,

Defendants' Motion will be granted.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1.    Defendants' Motion for Partial Summary Judgment (doc. 36) is

      **GRANTED** to the following extent:

      A.    Summary judgment is **GRANTED** in favor of Warden DeRose

          with exception of the claim that said Defendant retaliated against

          Plaintiff by subjecting him to an improper assessment of room and

          board and causing him to suffer income losses;

      B.    Summary judgment is **GRANTED** in favor of Defendants with

          respect to the allegations of retaliatory improper confinement,

          unconstitutional conditions of confinement, and denial of medical

          care;

      C.    Summary judgment is **GRANTED** with respect to the alleged

          retaliatory searches and seizures of Plaintiff and his personal

          property which preceded the discovery of Plaintiff's copy of the

          Koran; and

      D.    Summary judgment is also **GRANTED** to the John and Jane Doe

          Defendants.

25

2.      The Clerk is directed to **TERMINATE** the John and Jane Doe

Defendants as parties to this action.


                                        s/ John E. Jones III
                                        John E. Jones III
                                        United States District Judge